Filed 11/3/25  P. v. Batalla CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE GUADALUPE BATALLA,<br><br>    Defendant and Appellant. | G063720<br><br>(Super. Ct. No. 99WF1540)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Robert A. Knox, Judge. Affirmed. Request for judicial notice. Denied.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

*      *      *

In May 2000, a jury convicted Jose Guadalupe Batalla and Miguel Angel Padilla of premeditated attempted murder committed for the benefit of a criminal street gang. The trial judge instructed the jury it could convict Batalla under the theory he aided and abetted Padilla in the crime of exhibiting a firearm in a threatening manner and that the attempted murder was a natural and probable consequence of that crime.

Subsequent to Batalla's conviction, in 2018, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.), which "amend[ed] . . . the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 105, § 1, subd. (f).) The Legislature also permitted defendants convicted under a now invalid natural and probable consequences theory of liability to move to vacate the conviction. (Pen. Code, § 1172.6, subd. (a)(1)–(3).)[1]

The Legislature then enacted Senate Bill No. 775 (2021–2022 Reg. Sess.), which permitted defendants who were convicted of attempted murder under the natural and probable consequences doctrine to similarly petition the trial court to have their convictions vacated. (§ 1172.6,

---

[1] All further statutory references are to the Penal Code.

2

subd. (a)(1).) To do so, a defendant must file a petition which makes out a prima facie case for relief. (§ 1172.6, subd. (c).) If it does, the court must issue an order to show cause as to why it should not grant the requested relief. (*Ibid.*) The court must vacate the conviction unless the prosecution proves beyond a reasonable doubt that the defendant is guilty of attempted murder under a still-valid theory. (*Id.*, subd. (d)(3).) The court may consider evidence previously admitted at the defendant's initial trial as well as new evidence the prosecution or the defendant introduces at the hearing. (*Ibid.*)

Batalla filed such a petition for relief claiming he could no longer be convicted of attempted murder due to the changes in the law. The trial court ruled Batalla made out a prima facie case and set the matter for an order to show cause hearing. Based on the testimony from Batalla's prior jury trial as well as evidence introduced at the order to show cause hearing, the court ruled the prosecution proved beyond a reasonable doubt that Batalla aided and abetted the premeditated attempted murder—a still valid theory of attempted murder.

Batalla appeals this ruling arguing the evidence in the record does not support it. We disagree. The record demonstrates the attempted murder was the culmination of a rival gang conflict of which Batalla and Padilla were on one side and the victim on the other. Padilla and Batalla shared an intent and desire to kill the victim. To that end, they acted pursuant to a premeditated plan in which Batalla aided Padilla in shooting the victim. Therefore, we affirm.

3

FACTS

I.

CHARGES

In an amended information, the Orange County District Attorney charged Batalla and Padilla with one count of premeditated attempted murder (§§ 664, 187, subd. (a); count 1) and one count of street terrorism (§ 186.22, subd. (a); count 2). The information alleged Batalla and Padilla committed the attempted murder for the benefit of Colonia Juarez, a criminal street gang (§ 186.22, subd. (b)(1)), and that Batalla and Padilla vicariously discharged a firearm during the commission of the attempted murder which caused great bodily injury and was done to benefit Colonia Juarez, a criminal street gang (§ 12022.53, subds. (d) & (e)(1)). The information also alleged Padilla was a principal who was vicariously armed with a firearm and who knew another principal was personally armed with a firearm. (§ 12022, subd. (a)(1).) Following testimony at the jury trial, the information was amended to add the same allegation against Batalla. (§ 12022, subd. (a)(1).)

II.

EVIDENCE FROM THE JURY TRIAL

Batalla and Padilla were active members of the criminal street gang Colonia Juarez. Colonia Juarez and Orange County Mafia, another criminal street gang, were rivals. The two gangs had been feuding for about two years prior to the incident giving rise to the attempted murder charges.

The Rascals was another criminal street gang which associated with Orange County Mafia. The victim's brother was an active member of the Rascals, and the victim was an associate of the gang. The victim and his brother and Colonia Juarez were enemies.

In the months leading up to the incident, Colonia Juarez members repeatedly tagged the home of the victim and his brother. Colonia Juarez members broke the windows of the home of the victim and his brother; on another occasion, a crowbar was thrown at a car parked outside their house. Colonia Juarez members had also previously come to the victim's house looking for the victim's brother.

About five months before the incident, a Colonia Juarez member accidentally shot and killed himself. Despite the police determining it was an accident, an Orange County Mafia member falsely bragged to others that he was responsible for the killing. Police later located a funeral announcement for the Colonia Juarez member in Batalla's bedroom.

A month before the incident, the victim's brother had a birthday party at a park. A Colonia Juarez member walked by and stared at the victim and his brother. The victim's brother chased the Colonia Juarez member away. Later that day, friends of the victim and his brother found their car windows smashed at the park.

The next day, the victim's brother and an associate went to a Colonia Juarez member's home. They called the member out of his home and shot him several times.

Also, about a month before the incident (the exact time was not specified at trial), Batalla drove by the victim's house. A witness heard Batalla was going to come after the victim's brother and wanted to kill him. Padilla spoke to a fellow Colonia Juarez member and inquired about obtaining a gun. Padilla wanted the gun so he could "take out" the victim and his brother.

On the day of the incident, Batalla and Padilla left Padilla's aunt's house together in Batalla's car. They drove to the victim and his

brother's neighborhood, parking at a street corner not in front of the victim's residence. Batalla and Padilla got out of the car and jogged close together in the direction of the victim's home.

When Batalla and Padilla arrived, the victim was outside his home with three friends. Batalla and Padilla asked the friends where the victim's brother was; one of the friends replied, "'get out, we don't want any problems, leave.'" But Batalla and Padilla again asked where the victim's brother was.

One of the friends then ran away, so the victim started to run too. Padilla took out a gun and fired it five or six times towards the victim's house. Batalla stood next to Padilla. Padilla shot the victim once in the back. The victim continued to run away.

Once the shooting stopped, Padilla stood there with the gun while he and Batalla looked at what they had just done. Batalla and Padilla then jogged next to each other back to Batalla's car. They then drove to Batalla's girlfriend's apartment. When police later searched Batalla's car, they determined the fuse box area in the driver's compartment was removed which would allow something to easily be stashed there.

The prosecution called a gang expert who testified the victim's house was in an area in which Orange County Mafia members regularly congregated.[2] The expert explained how important respect is to a gang. A

---

[2] At the jury trial the expert testified regarding his training, experience, and expertise as it relates to gangs, gang culture, and the concepts of backup, respect, and disrespect. At the order to show cause hearing, the trial court considered the expert's testimony as it pertained to opportunity, intent, motive, and the groups he was familiar with at the time as well as whether the incident was related to any individual's association with or membership in that group. Batalla does not challenge the use of the

gang cannot exist without having respect from rival gangs. Disrespect is an insult to the gang. Shooting a gang member is the highest form of disrespect. If a gang member is disrespected, the gang must retaliate.

The expert also explained the concept of backup within a gang. Backup means the entire gang must support individual gang members in whatever they do, such as committing crimes. Backup can come in many forms: (1) a member may accompany other members who are committing crimes to act as a witness to the crime so they can tell the gang about it; (2) a member may act as a lookout to make sure there are no police or witnesses; (3) a member will provide courage and emotional support to another member who is committing the crime; (4) a member may accompany another member to make sure that member follows through and commits the crime; or (5) a member may provide physical support and help.

In this case, the expert opined the attempted murder of the victim was committed to further the Colonia Juarez gang and to regain the respect it lost when the victim's brother shot one of its members.

III.

CONVICTION, SENTENCE, AND APPEAL

Following the jury trial, Batalla and Padilla were convicted of all charges and enhancements. The trial court sentenced Batalla to a term of 40 years to life. In 2000, Batalla appealed arguing, in part, that the evidence was insufficient to support the attempted murder conviction. A different panel of this court disagreed, concluding substantial evidence supported the conviction.

_____

evidence for this purpose on appeal.

7

## IV.

### PETITION FOR RESENTENCING

In 2022, Batalla and Padilla filed petitions for resentencing (§ 1172.6) attesting they could no longer be convicted because of the changes in the law. The trial court ruled the petitions established a prima facie showing and set the matter for an order to show cause hearing as to why the court should not grant the relief requested. The prosecution filed an opposition arguing, relevant to this appeal, that Batalla could still be convicted of attempted murder as an aider and abettor which remained a valid theory of attempted murder.

At the hearing on both petitions, Padilla called a witness who was at the scene at the time of the shooting, as well as two police officers who were involved in the investigation. The civilian witness testified he saw Batalla and Padilla coming together from around the corner. When Batalla and Padilla arrived, Padilla asked, "Where's [the victim's brother]?" and then pulled out the gun.

One of the officers did not recall the incident. The other officer testified as to the description of the shooter given to him by the civilian witness at the time of the incident. Padilla was attempting to establish he was not the shooter. It was the prosecution's position that Padilla was the shooter.

Having reviewed the jury trial transcripts and the evidence presented at the order to show cause hearing, the court found the evidence established beyond a reasonable doubt that Padilla brought a gun to the location and shot the victim, that Batalla was standing next to Padilla, and that they ran together back to the parked car and drove away. The evidence also proved beyond a reasonable doubt that the two were members of Colonia

8

Juarez and that Padilla inquired about getting a gun to shoot the victim's brother. As to Batalla, the court also found that the evidence proved beyond a reasonable doubt that Batalla aided and abetted Padilla in committing the crime of attempted murder. Batalla knew Padilla intended to commit the crime; he intended to aid and abet Padilla; and his conduct at the scene and immediately after did in fact aid and abet Padilla.

DISCUSSION

I.

SUBSTANTIAL EVIDENCE SUPPORTS THE TRIAL COURT'S RULING

Batalla contends the evidence in the record does not support the trial court's ruling. He argues the evidence showed his involvement was de minimis. We disagree.[3]

Whether Batalla aided and abetted the attempted murder is a factual question which we review for substantial evidence. (*People v. Oliver* (2023) 90 Cal.App.5th 466, 480 (*Oliver*).) "We '"examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the necessary fact] beyond a reasonable doubt."' [Citation.] Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any

_____

[3] The Attorney General asks us to take judicial notice of the transcripts from Batalla's jury trial. The transcripts are already in the appellate record. (§ 1172.6, subd. (d)(3); Cal. Rules of Court, rule 8.320(c)(3).) Therefore, we deny the request.

substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt.' [Citations.]" (*Ibid.*)

Batalla contends we should conduct an independent review of the record because the trial court's factual findings rested on a record devoid of live testimony. Thus, as Batalla's argument goes, we are in the same position as the trial court to make factual determinations. This argument has been raised before and rejected. (*Oliver, supra*, 90 Cal.App.5th at p. 480; *People v. Njoku* (2023) 95 Cal.App.5th 27, 43; *People v. Underwood* (2024) 99 Cal.App.5th 303, 313 ["appellate courts that have considered this argument have uniformly rejected it"].)

Batalla does not make any effort to argue these cases were wrongly decided, nor does he even mention them. In any event, the trial court did hear live testimony at the order to show cause hearing. Therefore, we find no reason not to review under *Oliver's* substantial evidence standard.

Batalla's argument on appeal is premised on his application of the incorrect standard of review to the evidence. That is problematic. We presume the trial court's ruling was correct, and it is Batalla's burden to affirmatively prove otherwise. (*People v. Foss* (2007) 155 Cal.App.4th 113, 126.) To do so, he must tailor his arguments to the correct standard of review. (*Ibid.*) Batalla's failure to do so operates as a concession that the trial court got it right. (*Ibid.*)

Putting this aside, and utilizing the appropriate standard of review, we conclude there was substantial evidence to support the trial court's ruling.

Batalla argues that to be convicted as an aider and abettor to an attempted murder, there must have been evidence showing his conduct "endangered [the victim's] life and constituted a conscious disregard for life."

10

He argues because he "did not engage in a fight with anyone [and] did not restrain anyone," he cannot be convicted of attempted murder as an aider and abettor. However, Batalla's argument is based on *People v. Powell* (2021) 63 Cal.App.5th 689 (*Powell*) which does not apply here.

In *Powell*, the defendant was convicted of second degree murder on the theory he aided and abetted another in the commission of an implied malice murder. (*Powell, supra*, 63 Cal.App.5th at pp. 709–710.) An implied malice murder requires the direct perpetrator to commit a life-endangering act, to know that act endangers the life of another, and to consciously disregard that life. (*Id.* at pp. 713–714, fn. 29.) On appeal, the defendant argued "because aiding and abetting requires a specific intent, while implied malice murder has only the mental state of subjective awareness of the dangerousness of one's conduct, a coparticipant cannot directly aid and abet [an] implied malice murder." (*Id.* at p. 712.) The Court of Appeal disagreed. "[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea. [Citation.] In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act." (*Id.* at pp. 712–713, fn. omitted.)

Here, Batalla was not convicted of aiding and abetting an implied malice murder. Padilla did not commit an attempted implied malice murder. Nor could he. (See *People v. Bland* (2002) 28 Cal.4th 313, 327 ["implied malice cannot support a conviction of an *attempt* to commit murder"].)

11

Instead, Batalla was convicted of aiding and abetting Padilla's attempted murder.[4]

"'[T]o be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as an aider and abettor must intend to kill.'" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054.)

Here, there was substantial evidence Batalla aided or encouraged Padilla knowing Padilla intended to kill, with the purpose of furthering the accomplishment of that intent to kill, and while harboring his own intent to kill. Batalla and Padilla were both members of Colonia Juarez, a criminal street gang which had a long-standing feud with the victim and his brother's criminal street gang.

The attempted murder was the culmination of these feuds and was done in direct response to the shooting of a Colonia Juarez member by the victim's brother. The victim's brother's act of shooting Batalla and Padilla's fellow gang member required retaliation in their minds.

Batalla and Padilla retaliated. Padilla obtained the gun. Batalla provided his car in which they could stash the gun. On the day of the planned retaliation, they drove to the scene together in Batalla's car. They parked the car away from the victim's residence so as not to alert anyone of their presence. They jogged towards the victim's house in unison and asked to see

---

[4] Batalla also directs us to *People v. Reyes* (2023) 14 Cal.5th 981. But *Reyes* involved, again, a defendant who aided and abetted an implied malice murder. (*Id.* at p. 984.) Like *Powell*, *Reyes* does not apply here.

the victim's brother. When rebuffed, they did not leave. Instead, Padilla pulled out a gun and started shooting. Batalla was not surprised or taken aback by this act. Instead, in his role as backup, he stood by Padilla the whole time. Upon completion of their actions, they paused staring at the damage they caused as if to admire it. Batalla and Padilla then fled the scene in Batalla's car.

The evidence amply demonstrates the attempted murder was a joint undertaking pursuant to a premeditated plan to kill a rival gang member. Batalla and Padilla shared the same intent to kill, and Batalla acted and assisted Padilla with the purpose of facilitating that shared intent.

DISPOSITION

We affirm the postjudgment order denying Batalla's petition for resentencing.

BANCROFT, J.*

WE CONCUR:

MOTOIKE, ACTING P. J.

SCOTT, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.